## ASSIGNMENT FOR CREDITORS—FRAUDULENT CONVEYANCES.  256

[Lucas Circuit Court, January Term, 1891.]

Haynes, Bentley and Scribner, JJ.

### HORACE C. SYLVESTER ET AL. v. LOUISA HESSLEIN ET AL.

1. ASSIGNMENT IN CONTEMPLATION OF INSOLVENCY.

A, being insolvent, had executed a chattel mortgage on a stock of goods, and at or
about the same time she also executed a deed of assignment in trust for her creditors.
The allegations of the petition were that the assignment and the mortgage were made
in trust to prefer creditors, and also for the purpose of defrauding creditors, and to
hinder and delay creditors; Held, that the facts stated bring the case under sec. 6343
Rev. Stat., and that an appeal is allowable.

2. GIVING OF PREFERENTIAL MORTGAGES, AFTER WHICH AN ASSIGNMENT IS MADE TO
MORTGAGEE—EFFECT.

If preferential mortgages are given, and then an assignment for creditors is made, to
one of the mortgagees, who endorses an acceptance thereon, but never gives bond
or qualifies as assignee, but takes possession and sells as agent for the mortgagees,
he is liable for the proceeds as if he were assignee for creditors.

3. ASSIGNEE MUST HOLD PROCEEDS OF PROPERTY FOR EIGHT MONTHS.

The assignee for creditors must hold the proceeds of the property without distribution
until eight months have expired, and the court's approval of a prior distribution is
without jurisdiction.

4. SUCH MORTGAGES ARE ILLEGAL PREFERENCES, WHEN.

If a debtor voluntarily executes mortgages to certain creditors who are not asking them,
or pressing him, and then assigns for creditors, such mortgages are illegal prefer-
ences.

5. PREFERENCES MAY BE DECLARED FOR GENERAL BENEFIT.

If a creditor receive preferences which the law would treat as an assignment, and has
disposed of the property, the common pleas court has jurisdiction to entertain a suit
by a creditor to have the preferences declared for general benefit.

6. COMMON PLEAS COURT CANNOT DECLARE THE TRUST.

But the court of common pleas cannot declare the trust.  Its judgment must be certified
to the probate court for the appointment of a trustee and administration of the trust.

HAYNES, J. (orally).

This case comes into this court by appeal, and has been heard upon evidence
and arguments of counsel.

First.  The plaintiffs set out in substance that the defendant, Louisa Hesslein,
was carrying on business at the city of Toledo—a mercantile business—and that
at a certain time she, finding herself insolvent, had executed to certain parties
mortgages upon a stock of goods that she had in store here, and at or about the
same time she also executed a deed of assignment in trust for her creditors, and

---

†This case was cited in Farmers' National Bank v. Miller, 6 Ohio Circ. Dec., 2.

that by virtue of the facts in the petition the transaction should come under sec. 6343 or 6344, Rev. Stat., of the state governing insolvent debtors. The allegations of the petition are that the assignment and the mortgage were made in trust to prefer creditors, and also for the purpose of defrauding creditors and to hinder and delay creditors; and the first question that is made to us is a motion to dismiss the appeal, for the reason that this court has no jurisdiction. That it is not an appealable case, because it was triable by a jury. We are of opinion that the facts stated in the case will bring it, if true, under sec. 6343, and that an appeal was proper in the case from the decision of the court of common pleas to the circuit court. We have been far more troubled with the question as to whether or not the court of common pleas itself had jurisdiction in the case than with the question whether, if that court had jurisdiction in the case, it is appealable to this court.

Second.—The defendants moved the court to compel the plaintiffs to elect whether they would proceed under sec. 6343 or 6344. No motion was made to separately state or number the causes of action. We think, therefore, that the motion to elect should not be granted, but that the court should grant such relief as the plaintiffs may be entitled to if they are entitled to any, under either section of the statute. The allegations themselves in the petition, as we think, rather carry the case under 6343. The motion, therefore, that was made in that respect will be denied.

We come now to the question of the jurisdiction of the court of common pleas. The question has given us a good deal of trouble, and is an important question, and one that has led us to examine all the cases in the supreme court of this state bearing upon the question. The question is as to whether the plaintiffs had a right to commence a suit in the court of common pleas to have these mortgages declared a trust, or whether the proceedings should have been commenced in the probate court of the county. The facts, as they appear in the evidence, in the main, are these:

Louisa Hesslein was carrying on a mercantile business, as I have stated, in the city of Toledo; or, rather, the business was carried on in her name, she claiming to be the owner, but as a matter of fact she knew very little, if anything, about the business, it being conducted by her husband, Joseph R. Hesslein, as her agent; and whatever was done by her in the execution of the mortgages and papers that were executed, was done at the instance and suggestion, mainly of Joseph R. Hesslein, her husband. In considering the case we shall speak as if he were the real party in interest.

Either February 9 or 10, 1887, found Mr. Hesslein, of Chicago, here—a brother of Joseph R. Hesslein—and a member of the firm of Hesslein Bros., of Chicago. He came here, as he testifies, partly on a visit of pleasure, to visit relatives here and at Detroit, and partly to secure certain claims that he held against the defendant Louisa Hesslein. He had been here a day or two at that time, and remained a day or two longer. His brother had been talking to him some in regard to the business, and in regard to his helping them—of having his influence, perhaps, in a certain change in business that had been contemplated, whereby a combination was to be formed, or rather, as near as we can ascertain, a new partnership wherein this stock was to go in, and certain other stocks, and the business to be carried on on a larger scale; and Hesslein testified (Bernard, I think his name is) that he said to the brother, before he did anything further he must have security for the claims he held, which amounted to about $2,000, one of which—$900—had been given to him some years before, money loaned to Louisa Hesslein at the time she had been carrying on business at Detroit, Mich., and the balance moneys that had been loaned since that time, some of it even quite recently, and the paper itself being, so far as this balance was concerned, mostly not yet due. To this, Bernard says, they demurred, and objected to giving any mortgage, but that he pressed them for it, and thereupon they went to the office of their attorneys, and a mortgage was drawn up and signed by the wife. That mortgage appears to be dated in the body on February 9, but the affidavit is dated on the 10th, and it was sworn to on February 10, 1887, before Albert Alius, a notary public, and it was filed for record at 2 o'clock on that day. Joseph R. Hesslein testifies that he and his brother had been discussing the business; that he supposes from something he said his brother became alarmed. He don't know what it was, but he supposes it was from something he said. Thereupon Bernard insisted on the giving of a chattel mortgage, and it resulted in their going to the office of the attorneys.

On the morning of February 10, and almost immediately after making the affidavit, Bernard took it to the court house and filed it, and immediately proceeded to the store and took possession of the stock of goods, no objection being made to that by the parties in possession; Joseph R. Hesslein remaining there, as he had, overlooking the business, as he says under Bernard. Thereupon Joseph R. Hesslein and Louisa, being indebted to certain parties in the city, proceeded to have mortgages drawn up, first, to A. S. Cohen, and next to three parties in one joint mortgage, to-wit: to William Stern, Alexander Black, and L. Franc & Co., and also one to the Toledo National Bank. Cohen was a brother-in-law of J. R. Hesslein. When the mortgage was drawn, Cohen was notified, and came to the attorneys. Possibly he came to the office while the mortgage was being drawn. The mortgage was delivered to him, and he received it, made an affidavit to it, and immediately proceeded to the court house and filed it in the office of the recorder at 2:50 of February 10. This mortgage also was dated on February 9. Some time on February 10, Stern was notified to come to the office of the attorneys by some messenger. William Stern was out of town, but Henry Stern, acting as his agent, appeared there, and at the same time Mr. Alexander Black came to the office, and also Leopold Franc, of the firm of L. Franc & Co. They were notified that these mortgages had been prepared for them, and I think Mr. Franc was notified before he went up there, perhaps by Hesslein, that the mortgage would be given to him. They received and accepted the mortgages in question, made their affidavits upon them, and they were taken to the court house and filed at 5:15 of the same afternoon. As to the one to the Toledo National Bank, a telephone message was dispatched to the bank, and the cashier, Mr. Van Hoesen, came over, and he accepted and received a chattel mortgage to the bank, and that was filed that evening at 6:15, Mr. McMacken, the recorder, having been telephoned to remain until the mortgage should be brought over. Neither of these other parties, as the testimony discloses, was seeking or asking in any manner or form for a chattel mortgage, the mortgages, so far as the testimony discloses, having been voluntarily made on the part of Joseph R. Hesslein and Louisa Hesslein.

Leopold Franc testifies that at the time he had signed the papers for which he was an endorser—that Hesslein had been from time to time asking for an endorsement, or, as he says, pestering him a good deal about making an endorsement, and had told him that if it became necessary at any time to do it, that he would see him protected; that he came to the store on the 10th, and said to him that it was necessary for him to make a chattel mortgage to him, and thereupon Franc went to the office of the attorneys and met Mr. Black, and Stern, and I think Mr. Cohen. They had some little discussion about the order in which they should come—mainly that they should come in ahead of the bank; and the papers were so made. The next morning, the 11th, some time in the morning, Stern and Leopold Franc went to Alexander Black, the other mortgagee, and requested him to act as an assignee, under the insolvency law, for the assignment of the stock of goods, or of the interest of the Hessleins in it. He objected at first to doing anything of the kind, and they went away; and afterwards, the time being fixed variously from a half an hour to two hours, they came back, and urged him again, and he finally consented to accept as an assignee. Thereupon he was, a little while afterwards, called by telephone to the office of the attorneys, and went up there, and found the assignment, which was signed, I believe, in his presence, by Louisa Hesslein—at any rate it was signed by her—and upon which was filed this acceptance:

"Toledo, O., February 11, 1887—1 P. M.

"I hereby accept the foregoing trust.

"ALEXANDER BLACK."

That paper in the body reads that Louisa Hesslein assigns to the said Alexander Black "all right, title, and interest, that I now have in a certain stock of dry goods, consisting," etc., being the same goods that were described in the mortgages, and being in substance all of the property that Mrs. Hesslein had at that time, save a few book accounts, which were the next morning transferred to the Toledo National Bank. It further reads that the conveyance "is made subject to four certain chattel mortgages made and delivered by me on February 10, 1887, and all the statutory exemptions to which I am entitled; to have and to hold to the said Alexander Black, in trust for the equal benefit of all my unsecured creditors, in proportion to the amount of their respective demands, and to be by said trustee administered under and pursuant to the insolvency laws of the state of Ohio." There is no recollection on the part of Mr. Black that he took the assignment—he says he thinks he did not take it—to the court house, but it was taken to the court house, and it was filed there at 2 o'clock and 45 minutes, on February 11, 1887.

At the time the stock of goods was in possession of Bernard Hesslein, who was proceeding to make sales out of it under his chattel mortgage. And it seems at that time that some application was made to him in regard to the management of the stock of goods for the others, and he replied that he had taken it for security, and should manage it for the purpose of getting his money out of it, and at the same time intimated that he would do that without regard to the interests of any other party but himself. Thereupon a meeting was called of the other mortgagees at the office of the Toledo National Bank; there were present there all of the mortgagees except Hesslein. And after some conversation in regard to the matter, and some discussion—how much, we are unable to state—it was finally agreed that

they would purchase the interest of Hesslein, the mortgagees contributing an amount proportionate to their respective mortgages, and that then, out of the proceeds of the sale of the stock, they should be reimbursed their advances, and after that the proceeds should be divided in accordance with the order of their liens. Thereupon that arrangement was carried out, the respective parties giving their checks, the money being paid by the Toledo National Bank.

I should say in regard to the whole of this evidence, that the testimony was taken some three years after the transaction, and the parties being business men actively engaged, they seem to have been unable to recollect a great many of the things that transpired at the time, and it is only by taking the testimony of one, and another witness, that we get at the general details of the matter, so far as these meetings and conversations are concerned.

At the meeting it was agreed that Mr. Black, as agent for them, should take possession of the stock of goods, and should sell them, and distribute the money under these mortgages. At the same meeting, according to the testimony of Mr. VanHoesen, the question was discussed as to whether Mr. Black could do so consistently with his duties as an assignee, he having accepted under this assignment to which I have called attention; and whether with the advice of counsel or not, he don't seem to remember, it was finally decided that Mr. Black should take possession, and he did take possession of the stock. Mr. Black says in his testimony that he took possession as the agent of the mortgagees. Mr. VanHoesen says it was discussed whether he was an assignee. Some of the witnesses are unable to state whether they had heard at that time that he had been appointed as assignee or not. The matter seems to have passed from the minds of the witnesses; but we think the proof shows that the matter of the assignment was discussed at the meeting. Thereupon Mr. Black proceeded to sell this stock of goods. He advertised in the papers, and wrote to certain parties, and within a very few days—three or four, perhaps, a man by the name of Brown came here, who lives fifty or sixty miles from here in the state of Michigan, and purchased the stock of goods at sixty per cent. of the invoice price; Mr. Black having in the meantime invoiced them. Immediately after the sale the money was paid to Mr. Black, and a division of the same was made according to the arrangement above set forth between the mortgagees. They were paid their respective proportions; and this was all done within ten days from February 11.

After accepting under this assignment, Mr. Black did nothing more under it. When the ten days expired, the other creditors of Louisa Hesslein called upon the probate judge, and thereupon the probate judge wrote a letter to Mr. Black, which is in evidence, calling attention to the fact that he had not filed his bond and made an inventory, and practically requesting him to do so. Thereupon a letter which was not in evidence, was written by Black to the judge, saying there was no property to administer, and that he declined to file his bond or do anything further under the assignment. Thereupon this suit was soon after commenced.

At the time of the transaction, Louisa Hesslein was indebted about $23,000. The stock of goods, at New York cost, as we understand, was appraised at about $18,000 or $19,000. The goods had been, many of them, upon the shelves for three years, according to the testimony of Mr. Joseph R. Hesslein. In response to the interrogatories of his counsel, he said that they were worth about sixty cents on a dollar. They were sold at sixty cents on the dollar.

Now, on this state of facts, this petition being filed against the mortgagees and others, the first question that meets us is, whether the court of common pleas had jurisdiction to entertain this suit, or whether the right of the parties should have been worked out through the assignee, or a trustee appointed by the probate court to take the place of the assignee, in a suit to be brought by such trustee for that purpose. That has led us to examine some of the cases in which the supreme court have passed upon the question. The first case is that of Lindemann v. Ingraham, 1, 36 O. S. We are not furnished with any reports, and we shall have to state the case from memory. In that case, a party had made an assignment, after having executed mortgages, and after the conditions of the mortgages were broken, and after the property had been transferred to the assignees, who had proceeded to inventory and sell the same, a suit was brought by the mortgagees for the value of the property, claiming that the assignee had converted the same to his own use. That brought up the question of the jurisdiction of the probate court, and the court held that the court of probate had jurisdiction of the property and had the right to retain and sell it and pay

off the liens under the insolvency laws and distribute the proceeds and the mortgagees had no right to recover possession or recover the value of the property. It was conceded in that case that the condition of the mortgages being broken, the legal title to the property vested in the mortgagees; and it was argued to the court that by reason of that fact, that the assignee had no right whatever under the assignment to sell the property. But the court said that was not the law of Ohio; that the equity of redemption was a valuable thing; it might be a matter of great importance to the estate. Possibly the mortgages might equal the value of the property: possibly they might be but a very small portion of the value of the property; but in either case, the assignee had the right to take possession of the property, and to dispose of it; and in making a disposition of it the rule of *caveat emptor* did not apply; when he sold it, he sold it free of all liens; placing it in all respects upon the same ground as real estate, which, by the terms of the statute, is to be sold and delivered free of all liens. The decision in regard to the matter is quite lengthy, and is very full and conclusive upon the question of jurisdiction in regard to a case that arises under that state of facts. The court say, in conclusion, however, that if the property had been in the possession of the mortgagee, they would not pass upon what would be the rights of the parties; they would leave that question open and undecided; but where the property was in the hands of the assignee with these liens upon it, the jurisdiction of the probate court is exclusive in regard to the matter. That was reaffirmed in the same case in 37 O. S.

The next case of importance we come to is that of Blandy v. Benedict, 42 O. S., 295. That is one of quite a number of similar cases. A chattel mortgage had been made upon property, and the mortgagee had made an assignment, and delivered the property to the assignee; and the question had arisen in the distribution of the assets as to whether the mortgage was a valid and binding mortgage; and in this case it was held that it was not a valid and binding mortgage, so far as the creditors were concerned, for the reason that it was given to secure a party for an endorsement, and it did not set forth in the affidavit the proper facts. And hence the mortgage was to be void as against the creditors of the mortgagor. The deed of assignment conveyed the personal property, and had in it a clause, as there is in the one at bar, excepting from the operation of the assignment all existing liens which were not to be affected thereby; and it was claimed under that clause, that even if the mortgage was void, that inasmuch as the mortgage excepted all liens, that the rights of the mortgagees were preserved. But the court held that that construction could not be allowed, and that notwithstanding the clause was in the deed in regard to the liens, that the property passed; that the court had jurisdiction, and that the assignee represented all the creditors, and had a right not only to the possession of the property, but had the right to administer it and to pay it to the general creditors, and it was accordingly so ordered.

Another case of importance is the case of Sayler v. Simpson, 45 O. S., 141, the same case being decided again in 46 O. S., 510. In that case a manufacturing corporation in the city of Cincinnati, finding itself insolvent, caused to be executed mortgages to certain creditors, and the next day, perhaps two days afterwards it made a deed of assignment of all its property to an assignee for the benefit of its creditors. The assignee had taken possession of the property, and had proceeded to convert it into money, and the mortgagees filed petitions in the probate court praying for a distribution out of the funds to themselves of the amounts of their respective mortgages. And thereupon the assignees filed an answer, and certain of the creditors were allowed to come in and file answers and cross-petitions, in which they set up the facts, and averred that by reason of the facts stated, the transaction was really an assignment in trust to prefer the mortgagees who had filed those petitions. The case came up for hearing in the probate court, and that court held that the mortgages were valid mortgages, and against the alleged trust to prefer. An appeal was taken to the court of

common pleas, and the question was raised as to the jurisdiction of the probate court to hear the questions made by the cross-petitions of the creditors, it being very stoutly contended that the probate court had no such jurisdiction. And thereupon the court of common pleas held, upon a full discussion of the case, that the probate court had no such jurisdiction, and they reversed the action of the probate court in that respect. The case was taken to the circuit court, who affirmed the action of the common pleas, and thence the case was taken to the supreme court, and in a decision delivered by Judge Williams, the jurisdiction of the probate court in the matter set up in the cross-petition is very fully discussed. Reference is made in the decision to Lindeman v. Ingraham, *supra*, and Blandy v. Benedict, *supra*, and other cases and the court holds that the probate court had jurisdiction to hear and determine the questions made, and that the assignee might defend, and also that the creditors might come in and defend; held that they had a right to file their answer and cross-petitions; that the common pleas erred in holding that the court had no jurisdiction. The case is a very lengthy one, and is very fully discussed. Thereupon the cause was remanded, and was tried again in the court of common pleas, that court holding that the mortgages were valid and binding. The case then seems to have gone to the circuit court again, for while we find no decision of the circuit court, nevertheless, it went through the circuit court to the supreme court, and is reported in Sayler v. Simpson, 46 O. S., 510. The decision of the case is found immediately following —Rouse v. Bank. In that case Rouse v. Bank, the same question was made that is made here in regard to a trust arising on the facts stated. The court says the question was fairly made, but they decide the case upon the question as to whether or not an insolvent corporation can, through its directors, give any mortgage that will be valid and binding to any creditor, or whether the directors shall hold the whole of the property in trust for the equal benefit of all the creditors. They hold in substance that it is the duty of the trustees to hold the property for the equal benefit of all the creditors, and that a mortgage made under the circumstances set forth therein would be void. And they specially decline to pass upon the other question made, to-wit, a trust to prefer creditors under the insolvent laws. They decide the case of Sayler v. Simpson, *supra*, upon the same ground, it also being an assignment by a corporation.

Now what do the facts of the case show here? They show this: that immediately upon the execution of these mortgages—the next morning—this assignment was made, and it was made clearly with the knowledge of at least some of the mortgagees, because some of them were calling upon Mr Black to become assignee under this assignment, which he accepted finally; that on the next day the question was discussed whether he, Black, having accepted as assignee, can take this stock of goods as agent of the mortgagees. He proceeded to take possession of the stock of goods, and did take possession of it, as mortgagee, supposing that he had the full right to do that. (And I will say here in passing, that in taking these mortgages, the mortgagees were all acting in good faith, and were taking the same for the purpose of securing their claims, believing they had the right to do so.) The only question is, as to the position they occupy in the eyes of the law, and what the law declares the transaction to be, rather than what they understood or expected the transaction to be.

It will be observed that Mr. Black had not given bond, but the paper had been filed in the probate court. We think there will be no question between Black and the creditors, but that Black did take possession of the stock of goods, either as trustee or assignee under the assignment made; we think the goods came into his possession in such a maner that the law will declare that he should have held them as assignee. He supposed, however, he was acting as agent of the mortgagees, and proceeded to make the sale, and to distribute the sum realized therefrom among the mortgagees. And he thus took possession and sold the stock, and distributed the proceeds prior to the time within which he was compelled by law to give the bond; and at the expiration of that time he declined

to give the bond, claiming that there were no assets and no property to be administered upon. At this point the court of probate seems to have ceased to act. I do not mean to say that it ceased to have jurisdiction, but it ceased to act. We think ourselves that the safe and proper course would have been for the parties to have made application for the appointment of a trustee; and the law clearly points out what his rights are, and what he might do. And we have no question that upon the appointment of a trustee, that Mr. Black, if he had been called upon to account, would have been compelled to account to the trustee for his transactions in regard to that stock of goods. It was clearly his duty when he received possession of that stock of goods, to have filed his bond, filed an inventory, to have sold the stock, to have reported that to the probate court at the end of eight months, and then at that time the parties would have had an opportunity to come in and file their exceptions, and their rights would have been ascertained. We had this question up in a case that was very closely contested in Sandusky county, where the assignee had taken the stock of goods, sold it, and appropriated the money among the mortgagees immediately after, with the approval of the court. We held that it was the plain and imperative duty of the assignee under the statute to have held the proceeds of the property until eight months had expired, there being no right of the creditors before that time to except to claims made, so that they should have had an opportunity at that time to have excepted if they chose to, both in regard to the distribution of the proceeds or payment of the liens. We held that the action of the probate court was premature and without jurisdiction in that respect, and held that the assignee should be called upon to account for what he had done with the property. And we think that decision was correct.

If application had been made to the probate court while that property was in the hands of Mr. Black as assignee, there would be no question, in our opinion, but that the court would have had jurisdiction of the subject-matter and of the assignee, and that its jurisdiction would have been exclusive. The property, however, was sold, and was distributed, and went into the hands of other parties, and that court was never in fact called upon to act after the distribution.

Section 8340 reads: "Whenever the probate court appoints a trustee, whether in place of an assignee or a trustee before appointed by the court, such trustee shall, within ten days after his appointment, give bond as aforesaid, or failing so to do, he may be considered as declining the appointment, and the place may be filled by the court; and when a trustee shall have given bond, he shall succeed to all the rights, powers, and privileges of the preceding assignee or trustee; and the court may make and enforce all orders necessary to put the newly appointed trustee into possession of all property, moneys, books, papers, evidences of title and other effects covered by the assignment or in any way belonging to the trust; and such trustee may by suit in the court of common pleas or otherwise, compel the delivery to him of all such property, moneys, books, papers, evidences of title, and other effects."

So a provision is made for bringing suit in the court of common pleas to recover assets. We think it would have been perfectly competent, if a trustee had been appointed, for him to have brought a suit in the nature of this suit, setting up that these transactions were, in fact a conveyance in trust for the purpose of preferring creditors, and asking that they should be so declared, and that the parties be requested respectively to account to him for the proceeds that they had received. And we are further of opinion, that under the decision I have cited here—Sayler v. Simpson, *supra*, that a creditor may take proper steps, being interested in the fund, to have the same declaration made, viz.: the transaction declared to be a trust for all the creditors. And we think also that he may bring his suit in the court of common pleas for that purpose, the property having passed out of the hands of the assignee into the hands of the mortgagees before the commencement of the suit.

The question is one that has given us trouble, and about which there is doubt; yet the better opinion seems to be, in our minds—and for myself I feel quite clear—that a suit may be brought by one of the creditors, as in this suit,

and that the court of common pleas has jurisdiction to hear and determine the question.

To prevent any misunderstanding, I will say that if the stock had remained in the hands of the assignee until a trustee had been appointed, the effect of the Lindeman v. Ingraham, *supra*, case is, that the probate court would have exclusive jurisdiction. We sustain this jurisdiction simply, and only, because the probate court had not acted, and the property had passed out of the possession of Black, and away from him into the hands of a purchaser, and the proceeds into the hands of the assignee as before stated. This suit is preliminary to putting the trustee in possession of the property.

I come now to another question touched upon in the argument of the case, and that is, whether or not the execution of the mortgages and the deed of assignment, under the circumstances that I have stated, make the case one where there was an assignment in trust in contemplation of insolvency, with intent to prefer creditors. It is claimed as to one of these mortgages, it having been executed to three parties, that that transaction possibly would make an assignment in trust to prefer creditors, and might require the property to be held and disposed of for the benefit of all the creditors; but without stopping to discuss that question at any length at the present time, we think the decision of the supreme court in the case of Justice v. Uhl, 10 O. S., 170, settles that question so far as this case is concerned, and we therefore pass it without any further discussion.

Another important question has been discussed at length, and upon that on the facts stated, we think, after a very full examination of the cases in this state and other states, we ought to hold that where a mortgage is made voluntarily, as it was to some of these parties, and at the same time and as a part of the same transaction the mortgagor intended to and did make an assignment for the benefit of all his creditors, intending at the time to surrender possession of his property, to terminate his business, to yield the control of all his property to his creditors—that when he makes the mortgages and assignment under that state of facts, the transaction should be held to be one transaction and an assignment in trust in contemplation of insolvency with intent to prefer creditors, that practically the transaction would stand in the same position that it would if the party had made in the body of the assignment itself a statement that the parties to whom he had made the mortgages should be paid first. Indeed, in this case he makes the assignment subject to the mortgages, and with intent that the mortgages be first paid. In cases of this kind, the language of one of the courts is, that the mortgage should be treated as if it was incorporated in and a part of the same instrument of assignment, because the intention of the maker is that the person to whom he has executed the instrument should pay the mortgages out of the fund or property assigned.

The conclusion we have reached is supported by the following authorities, but I have not time to read from them now. Suffice it to say, that we are in hearty accord with the doctrines therein announced. Turner v. Reed, *ante;* Nat'l Bank v. Nat'l Bank, *ante;* Preston v. Spaulding, 120 Ill., 208; Field v. Geohegan, 125 Ill., 68, and the numerous cases cited in above cases.

But the authorities cited hold that where the party, although in failing circumstances, makes a chattel mortgage to a creditor who is proceeding against him in an adverse manner, pressing him for his claim, where the debtor himself intends to remain in possession of his business, his goods, and go on, and to endeavor, if you please, to go through and redeem himself from his indebtedness—that under circumstances of that kind a chattel mortgage made to such creditor will be valid.

Now, under the facts that I have stated in this case, it would appear from the best light we can get from the testimony, that so far as the Hessleins of Chicago are concerned, that they came here to collect their claim; that Bernard came here and commenced to press for his claim, and to press for a mortgage, and that he obtained his mortgage; that he took possession under his mortgage;

that when others, who had subsequent claims upon the stock, came to him, he plainly told them that he was looking simply and purely to his own interest, and he should protect his own interest, so far as he could in an adversary manner as against all comers. We are of the opinion that, under the facts and circumstances disclosed in this evidence, we should hold that he was all the time proceeding in an adversary manner, and that his mortgage was a valid mortgage, and should be protected under the circumstances.

With regard to the other mortgages, we are of opinion that they were voluntary. The persons to whom they were made were not pressing Hesslien; they were not saying anything to him about mortgages. He unquestionably formed in his mind an idea of making these mortgages very early after making the first mortgage; also formed the idea of making the assignment in trust for the benefit of his creditors The fact was, that these things were carried out consecutively, just about as rapidly as they could be carried out and put in effect. The assignment was made with reference to the mortgages that had already been given, and the creditors to whom these later mortgages were given, were active in taking steps the next morning to have an assignee appointed, and one of their number accepted the position of assignee.

It was urged that the effect of the assignment was to carry only a naked equity of redemption. So far as Hesslein was concerned, it was a conveyance of all his interest in the property, subject to the mortgages; and if he had designated by name the whole stock of goods, and said that he conveyed that subject to the mortgages, he would have conveyed no more, he would have conveyed no less. And that doctrine is recognized by Judge McIlvaine in the Lindeman case that I have cited. So it shows on the face of it, that it was carrying out a previous intention; it was perfecting one plan, whereby he was preferring these creditors and at the same time making an assignment in trust, and putting it into the hands of one of the mortgagees, to hold possession of a paper assignment, who stands upon his rights as assignee until, as mortgagee, he has made sale of all the property and divided the proceeds; and then he, so far as he can, casts the assignment aside. By so holding said paper while he held possession of the property, he practically excluded all of her creditors from coming in and making levies upon the stock, or otherwise interfering with it—or such at least would seem to be the intention of the parties. We are of the opinion, so far as these parties were concerned, that the transaction should be held to be an assignment in trust for the purpose of preferring those creditors.

The decree in a case of this kind, in our judgment, can only go to this extent, and that is, to declare that fact, and that the matter must go back to the probate court for the appointment of a trustee under sec. 5344, for the purpose of carrying out the decree—for the purpose of collecting the assets and making a distribution according to law. We know that in the decree that was rendered by the court, there was merely a decree in favor of the plaintiffs. We think no such decree should have been rendered by that court, or ought to be rendered by this court. In this action we can go not a step farther than to declare that this was a trust to prefer creditors.

The question arises as to whether or not we should allow counsel fees in a case of this kind. Section 6344, it will be remembered, says:

"Section 6344: All transfers, conveyances, or assignments made by a debtor, or procured by him to be made, with intent to hinder, delay, or defraud creditors, shall be declared void at the suit of any creditor; and the probate judge of the proper county, after any such transfer, conveyance, or assignment shall have been declared by a court of competent jurisdiction to have been made with the intent aforesaid, or in trust with the intent mentioned in the next preceding section, shall, on the application of any creditor, appoint a trustee according to the provisions of this chapter, who, upon being duly qualified, shall proceed by due course of law to recover possession of all property so transferred, conveyed, or assigned, and to administer the same as in other cases of assignments to trustees for the benefit of creditors; provided, however, that any creditor instituting a suit for the purpose aforesaid shall cause notice of the pendency and object thereof to be published for at least

four consecutive weeks in some newspaper printed or of general circulation in the county in which said suit shall be pending; and all creditors who shall within fifteen days next after the expiration of said notice file an answer in said action in the nature of a cross-petition, praying to be made parties thereto, and setting forth the nature and amount of their respective claims, and shall secure the payment of their pro rata share of the costs and expenses of such action, including reasonable counsel fees, and proportioned to the amount of their said claims, either by a deposit of money or by an undertaking given to the plaintiff, in such sum and with such security as the court or clerk thereof shall require and approve, shall be first entitled with the plaintiff to the benefits of such transfer, conveyance, or assignment, in proportion to the amounts of their respective claims; and in case of such notice being given, the court in which said transfer, conveyance, or assignment shall have been declared to have been made with the intent aforesaid, may proceed fully to administer this trust, both as to the creditors who are parties as aforesaid, and those who have not come in and been so made parties, distributing to the latter the surplus, if any, after satisfying the claims of those who have preference as aforesaid; but if such court shall not so administer the trust, or if such notice shall not have been given, said court shall forthwith, on declaring the intent aforesaid, cause a copy of the judgment to be certified to the proper probate court, which shall, on its own motion, appoint a trustee as in this chapter provided, etc."

We are of opinion, so far as the latter part of the clause as to the allowance of attorney's fees is concerned, that it does not apply to sec. 6343. Instead of holding the trust and appointing a trustee to carry out the trust, we have come to the conclusion that proper way is to have the case sent back to the probate court for the appointment of a trustee and the administration of the trust there. But at the same time we think that there should be allowed out of the trust fund to counsel a reasonable counsel fee, and it may be inserted in the journal entry that out of this trust fund the probate court should allow a proper fee to the counsel in the matter.

I should state further, that these mortgages having paid the Hesslein mortgage, they stand subrogated to the rights of Hesslein in that respect, and are not to account to the trustee appointed in this case for the amount of money that went into the hands of Hesslein or the Hesslein mortgage, that amounted to $2,600.

Thomas H. Tracy, for plaintiffs.

John C. Lee, and Richard Waite, for defendants.